IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| BLUE SPIKE, LLC | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | JURY TRIAL DEMANDED |
| v. | § | |
| | § | |
| BARNES & NOBLE, INC., BARNES & | § | |
| NOBLE BOOKSELLERS, INC., NOOK | § | |
| DIGITAL LLC, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT



Plaintiff Blue Spike, LLC files this complaint against Defendants Barnes & Noble, Inc., Barnes & Noble Booksellers, Inc., and Nook Digital LLC ("Nook") alleging eleven (11) counts of infringement of the following Patents-in-Suit:

**BLUE SPIKE'S WATERMARKING PATENTS**:

1.      U.S. Patent No. 7,779,261, titled "Method and System for Digital Watermarking" (the '261 Patent);

2.      U.S. Patent No. 8,161,286, titled "Method and System for Digital Watermarking" (the '286 Patent);

3.      U.S. Patent No. 8,307,213, titled "Method and System for Digital Watermarking" (the '213 Patent, and collectively with U.S. Patent Nos. 7,779,261 and 8,161,286 the "Watermarking Patents");

**BLUE SPIKE'S SECURE SERVER PATENTS:**

4.      U.S. Patent No. 7,475,246, titled "Secure Personal Content Server" (the '246 Patent);

5.      U.S. Patent No. 8,171,561, titled "Secure Personal Content Server" (the '561 Patent);

6.      U.S. Patent No. 8,739,295, titled "Secure Personal Content Server" (the '295 Patent, and collectively with U.S. Patent Nos. 7,475,246 and 8,171,561, the "Secure Server Patents");

**BLUE SPIKE'S OPEN ACCESS PATENTS:**

7.      U.S. Patent No. 7,813,506, titled "System and Methods for Permitting Open Access to Data Objects and for Securing Data within the Data Objects" (the '506 Patent);

8.      U.S. Patent No. 8,798,268, titled "System and Methods for Permitting Open Access to Data Objects and for Securing Data within the Data Objects" (the '268 Patent, and collectively with U.S. Patent 7,813,506, the "Open Access Patents");

**BLUE SPIKE'S OPTIMIZATOIN PATENTS:**

9.      U.S. Patent No. 7,953,981, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digital Data" (the '981 Patent);

10.     U.S. Patent No. 8,121,343, titled "Optimization Methods for the Insertion, Protection, and Detection of Digital Watermarks in Digitized Data" (the '343 Patent, and collectively with U.S. Patent 7,953,981, the "Optimization Patents"); and

**BLUE SPIKE'S TRUSTED TRANSACTIONS PATENT:**

11.     U.S. Patent No. 7,159,116, titled "Systems, Methods and Devices for Trusted Transactions" (the '116 Patent and the "Trusted Transaction Patent").

## NATURE OF THE SUIT

1.    This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

## PARTIES

2.    Plaintiff Blue Spike, LLC is a Texas limited liability company and has its headquarters and principal place of business at 1820 Shiloh Road, Suite 1201-C, Tyler, Texas 75703. Blue Spike, LLC is the assignee of the Patents-in-Suit, and has ownership of all substantial rights in them, including the rights to grant sublicenses, to exclude others from practicing the inventions taught therein, and to sue and obtain damages and other relief for past and future acts of infringement.

3.    On information and belief, Barnes & Noble, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 122 Fifth Avenue, New York, New York 10011. Barnes & Noble, Inc. is registered in the state of

Texas and may be served through its registered agent, Capitol Corporate Services, Inc., at 206 E. 9th Street, Suite 1300, Austin, Texas 78701-4411.

4.    On information and belief, Barnes & Noble Booksellers, Inc. is a corporation organized and existing under the laws of Delaware with its principal place of business at 122 Fifth Avenue, New York, New York 10011. Barnes & Noble Booksellers, Inc. is registered in the state of Texas and may be served through its registered agent, Capitol Corporate Services, Inc., at 206 E. 9th Street, Suite 1300, Austin, Texas 78701-4411.

5.    On information and belief, Nook Digital LLC (which became a successor in interest of barnesandnoble.com, llc), is a subsidiary of Barnes & Noble Booksellers, Inc., and is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 76th Ninth Ave, 9th Floor, NY, NY 10011 and may be served through its registered agent Capitol Services, Inc., at 1218 Central Avenue, Suite 100, Albany, NY  12205.

## JURISDICTION AND VENUE

6.    This lawsuit is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1338(a), and 1367.

7.    The Court has personal jurisdiction over Defendant for at least four reasons: (1) Defendant has committed acts of patent infringement and contributed to and induced acts of patent infringement by others in this District and elsewhere in Texas; (2) Defendant regularly does business or solicits business in the District and in Texas; (3) Defendant engages in other persistent courses of conduct and derives substantial revenue from products and/or services provided to individuals in the District and in

Texas; and (4) Defendant has purposefully established substantial, systematic, and continuous contacts with the District and should reasonably expect to be haled into court here.

8.      Specifically, Defendant has partnered with numerous resellers and distributors to sell and offer for sale infringing products to consumers in this District and in Texas, both in local stores and online (*see*, *e.g.*, Exhibits 1, 2); Defendant operates a website that solicits sales of infringing products by consumers in this District and Texas (Exhibit 3); Defendant offers telephonic and e-mail support services to customers in this District and Texas (*see* Exhibit 4); Defendant is registered with the Texas Secretary of State (*see* above); Defendant engages in substantial business acquisitions in this District (*see* Exhibit 5 at 2 (describing Defendant's acquisition of Texas-based Bookstop, "the fourth largest  bookstore chain in the nation")); Defendant continues to invest in large development projects in this district  (*see* Exhibit 6 (describing new Barnes & Noble concept store in Plano, TX scheduled to open in March, 2017)); and Defendant's presence in this state is second in the entire nation (*see* Exhibit 7). Given these extensive contacts, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

9.      Thus, the Court's exercise of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice.

10.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because Defendant does business in the State of Texas, has committed acts of infringement in Texas and in the District, a substantial part of the events or omissions

giving rise to Blue Spike's injury happened in the District, and Defendant is subject to personal jurisdiction in the District.

## FACTUAL BACKGROUND

11.     Protection of intellectual property is a prime concern for creators and publishers of digitized copies of copyrightable works, such as musical recordings, movies, video games, and computer software. Blue Spike founder Scott Moskowitz pioneered—and continues to invent—technology that makes such protection possible.

12.     Moskowitz is a senior member of the Institute of Electrical and Electronics Engineers (IEEE), a member of the Association for Computing Machinery, and the International Society for Optics and Photonics (SPIE). As a senior member of the IEEE, Moskowitz has peer-reviewed numerous conference papers and has submitted his own publications.

13.     Moskowitz is an inventor of more than 100 patents, in the areas of forensic watermarking, signal abstracts, data security, software watermarks, product license keys, deep packet inspection, license code for authorized software, and bandwidth securitization, among others.

14.     The National Security Agency (NSA) even took interest in his work after he filed one of his early patent applications. The NSA made the application classified under a "secrecy order" while it investigated his pioneering innovations and their impact on national security.

15.     As an industry trailblazer, Moskowitz has been a public figure and an active author on technologies related to protecting and identifying software and multimedia content. A 1995 *New York Times* article—titled "TECHNOLOGY: DIGITAL

COMMERCE; 2  plans for watermarks, which can bind proof of authorship to electronic works"—recognized Moskowitz's company as one of two leading software start-ups in this newly created field. *Forbes* also interviewed Moskowitz as an expert for "Cops Versus Robbers in Cyberspace," a September 9, 1996 article about the emergence of digital watermarking and rights-management technology. He has also testified before the Library of Congress regarding the Digital Millennium Copyright Act.

16.     Moskowitz has spoken to the RSA Data Security Conference, the International Financial Cryptography Association, Digital Distribution of the Music Industry, and many other organizations about the business opportunities that digital watermarking creates. Moskowitz also authored *So This Is Convergence?*, the first book of its kind about secure digital-content management. This book has been downloaded over a million times online and has sold thousands of copies in Japan, where Shogakukan published it under the name *Denshi Skashi*, literally "electronic watermark." Moskowitz was asked to author the introduction to *Multimedia Security Technologies for Digital Rights Management*, a 2006 book explaining digital-rights management. Moskowitz authored a paper for the 2002 International Symposium on Information Technology, titled "What is Acceptable Quality in the Application of Digital Watermarking: Trade-offs of Security, Robustness and Quality." He also wrote an invited 2003 article titled "Bandwidth as Currency" for the *IEEE Journal*, among other publications.

17.    Moskowitz and Blue Spike continue to invent technologies that protect intellectual property from unintended use or unauthorized copying.

## THE ACCUSED PRODUCTS

18.    Defendant designs, develops, manufactures and/or provides products, services and/or software applications that employ watermarking technology that infringes one or more claims of the Patents-in-Suit (the "Accused Products").

19.    Defendant designs, develops, employs, and/or manufactures infringing systems, and/or technology. Defendant makes, uses, offers for sale and/or imports into the U.S. products, systems, and/or services including, but not limited to, its Nook, Nook HD, Nook HD+, Nook Tablet 7", Nook Tablet 9", Nook Simple Touch, Nook Simple Touch with GlowLight, Nook GlowLight, Nook GlowLight Plus (E Ink), Nook Color, Samsung Galaxy Tab NOOK series of devices, and DRM software (including Adobe ADEPT) (collectively, the "Accused Products"), which infringe one or more claims of the Patents-in-Suit.

20.    Defendant has not obtained a license for any of Blue Spike's patented technologies.

21.    Yet Defendant's Accused Products are using methods, devices, and systems taught by Blue Spike's Patents-in-Suit.

## COUNT 1:
## INFRINGEMENT OF U.S. PATENT 7,779,261

22.    Blue Spike incorporates by reference the allegations in the paragraphs above.

23.    The '261 Patent is valid, is enforceable, and was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '261 Patent is attached to this Complaint as Exhibit A.

24.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '261 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

25.   Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '261 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '261 Patent. Specifically, Defendants manufacture and/or import the Accused Products into the United States; have partnered with numerous resellers to offer for sale and sell the Accused Products in the United States, in numerous stores and websites (*see*, *e.g.*, Exhibits. 1, 2, 6); operate their own websites that offer for sale and sell the Accused Products to consumers in Texas and this District (*see*, *e.g.*, Exhibits 3, 4); and generate revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*).

26.   Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012) ("Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation.").

27.   The Accused Products infringe claims of the '261 Patent, such as Claim 7 which teaches

> A method for watermarking a content signal with a plurality of functions, including the input of at least a key and digital watermark, the method configured to be executed by a computer programmed to perform the steps of:
> > providing a key generated by the following steps;

generating a random sequence of binary numbers; and

generating information describing the application of the random sequence to the content signal wherein combining the random sequence and the generated information forms the key;

providing a digital watermark to be encoded;

encoding the digital watermark using at least the key and the plurality of functions to produce a watermarked content signal;

detecting at least a portion of the digital watermark from a watermark content signal using the key.

Defendant's Accused Products watermark ebooks with information specific to the purchaser and encoded by encryption (*a method for watermarking a content signal with a plurality of functions, including the input of at least a key and digital watermark*). *See, e.g.*, Exhibit 7 ("Barnes and Noble's key derivation algorithm"); Exhibit 8 (Barnes and Noble uses Adobe's ADEPT DRM scheme in which "a per-user RSA key encrypts a per-book AES key which encrypts the content"); Exhibit 9 at 69, Exhibit 10 at 10 (explaining how personal information must be entered to access ebooks including all credit card numbers associated with a user's ebooks); Exhibit 11 at 4 ("Barnes and Noble's Nook . . . uses an encryption key based on the customer's name and credit card number."). The Accused Products are key-based ("*providing a key*") in which a per-user RSA key encrypts a per-book AES key which encrypts the content (*generating a random sequence*; *generating information describing the application of the random sequence*; *encoding the digital watermark*)."

28.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '261 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one

or more claims of the '261 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '261 Patent. By making, using, importing offering for sale, and/or selling such products, and with knowledge of the Patents-in-Suit, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '261 Patent under 35 U.S.C. § 271. Defendant induces and contributes to the infringement of its customers, including purchasers of the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '261 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. For example, Defendant's Accused Products are shipped with a User Guide that instructs and encourages customers to infringe. (*See* Exhibit 9). Thus, Defendant is liable for infringement of one or more claims of the '261 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '261 Patent under 35 U.S.C. § 271.

29.    Defendant's acts of infringement of the '261 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '261 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

30.    On information and belief, the infringement of the '261 Patent by Defendant has

been willful and continues to be willful. Defendant had knowledge of the '261 Patent,

including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to concurrent litigation with Blue Spike; and

    c.    The filing of this complaint. (*See Affinity Labs of Texas, LLC v. Alpine Elecs.
        of Am., Inc*., No. 9:08-CV-171, 2009 WL 9091275, at *4 (E.D. Tex. Sept. 2,
        2009) (holding that there is no *per se* rule prohibiting a claim for willfulness
        relying on post-filing conduct, regardless of whether an injunction was
        sought)).

On information and belief, Defendant has had at least had constructive notice of the '261

Patent by operation of law.

## COUNT 2:
## INFRINGEMENT OF U.S. PATENT 8,161,286

31.    Blue Spike incorporates by reference the allegations in the paragraphs above.

32.    The '286 Patent is valid, is enforceable, and was duly and legally issued by the

United States Patent and Trademark Office. A true and correct copy of the '286 Patent is

attached to this Complaint as Exhibit B.

33.    Without a license or permission from Blue Spike, Defendant has infringed and

continue to infringe on one or more claims of the '286 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of

the Accused Products, in violation of 35 U.S.C. § 271.

34.    Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '286 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '286 Patent. Specifically, Defendants manufacture and/or import the Accused Products into the United States; have partnered with numerous resellers to offer for sale and sell the Accused Products in the United States, in numerous stores and websites (*see*, *e.g.*, Exhibits. 1, 2, 6); operate their own websites that offer for sale and sell the Accused Products to consumers in Texas and this District (*see*, *e.g.*, Exhibits 3, 4); and generate revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*).

35.    Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012) ("Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation.").

36.    The Accused Products infringe claims of the '286 Patent, such as Claim 1 which teaches

> A method for decoding digital watermarks, comprising:
>     receiving a content signal encoded with a digital watermark; and
>     decoding, said digital watermark from said content signal using a key that comprises information describing where in the content signal said digital watermark is encoded.

Defendant's Accused Products watermark ebooks with information specific to the purchaser and encoded by encryption, and require decoding of the digital watermark in order for the ebook to be viewed (*a method for decoding digital watermarks*). *See, e.g.*,

Exhibit 8 (Barnes and Noble uses Adobe's ADEPT DRM scheme in which "a per-user RSA key encrypts a per-book AES key which encrypts the content"); Exhibit 9 at 69, Exhibit 10 at 10 (explaining how personal information must be entered to access ebooks including all credit card numbers associated with a user's ebooks); Exhibit 11 at 4 ("Barnes and Noble's Nook . . . uses an encryption key based on the customer's name and credit card number."). When an ebook is purchased, it is sent to the accused product (*receiving a content signal encoded with a digital watermark*) and decoded using an encryption key that comprises information about where the watermarked information resides (*decoding said digital watermark from said content signal using a key that comprises information describing where in the content signal said digital watermark is encoded*). *See, e.g.*, Exhibit 8 (Barnes and Noble uses Adobe's ADEPT DRM scheme in which "a per-user RSA key encrypts a per-book AES key which encrypts the content").

37.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '286 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '286 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '286 Patent. By making, using, importing offering for sale, and/or selling such products, and with knowledge of the Patents-in-Suit, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '286 Patent under 35 U.S.C. § 271. Defendant induces and contributes to the infringement of its

customers, including purchasers of the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '286 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. For example, Defendant's Accused Products are shipped with a User Guide that instructs and encourages customers to infringe. (*See* Exhibit 9). Thus, Defendant is liable for infringement of one or more claims of the '286 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '286 Patent under 35 U.S.C. § 271.

38.     Defendant's acts of infringement of the '286 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '286 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

39.     On information and belief, the infringement of the '286 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '286 Patent, including but not limited to at least one or more of the following:

    a.     In the course of its due diligence and freedom to operate analysis;

    b.     Due diligence in relation to concurrent litigation with Blue Spike; and

c.   The filing of this complaint. (*See Affinity Labs of Texas, LLC v. Alpine Elecs. of Am., Inc*., No. 9:08-CV-171, 2009 WL 9091275, at *4 (E.D. Tex. Sept. 2, 2009) (holding that there is no *per se* rule prohibiting a claim for willfulness relying on post-filing conduct, regardless of whether an injunction was sought)).

On information and belief, Defendant has had at least had constructive notice of the '286 Patent by operation of law.

## COUNT 3:
## INFRINGEMENT OF U.S. PATENT 8,307,213

40.   Blue Spike incorporates by reference the allegations in the paragraphs above.

41.   The '213 Patent is valid, is enforceable, and was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '213 Patent is attached to this Complaint as Exhibit C.

42.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '213 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

43.   Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '213 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '213 Patent. Specifically, Defendants manufacture and/or import the Accused Products into the United States; have partnered with numerous resellers to offer for sale and sell the

Accused Products in the United States, in numerous stores and websites (*see*, *e.g.*, Exhibits. 1, 2, 6); operate their own websites that offer for sale and sell the Accused Products to consumers in Texas and this District (*see*, *e.g.*, Exhibits 3, 4); and generate revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*).

44.    Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012) ("Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation.").

45.    The Accused Products infringe claims of the '213 Patent, such as Claim 1 which teaches

> An article of manufacture comprising a nontransitory medium having stored thereon instructions adapted to be executed by a processor, the instructions which, when executed, result in the process comprising: receiving content to be watermarked and at least one digital watermark; and watermarking the content with the received at least one digital watermark using a key comprising information describing where in the content the received at least one digital watermark is to be encoded.

Defendant's Accused Products watermark ebooks with information specific to the purchaser and encoded by encryption (*receiving content to be watermarked and at least one digital watermark*). *See, e.g.*, Exhibit 8 (Barnes and Noble uses Adobe's ADEPT DRM scheme in which "a per-user RSA key encrypts a per-book AES key which encrypts the content"); Exhibit 9 at 69, Exhibit 10 at 10 (explaining how personal information must be entered to access ebooks including all credit card numbers

associated with a user's ebooks); Exhibit 11 at 4 ("Barnes and Noble's Nook . . . uses an encryption key based on the customer's name and credit card number."). The ebook is encoded using an encryption key that comprises information about where the watermarked information resides (*watermarking the content with the received at least one digital watermark using a key comprising information describing where in the content the received at least one digital watermark is to be encoded*). *See, e.g.*, Exhibit 8 (Barnes and Noble uses Adobe's ADEPT DRM scheme in which "a per-user RSA key encrypts a per-book AES key which encrypts the content").

46.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '213 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '213 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '213 Patent. By making, using, importing offering for sale, and/or selling such products, and with knowledge of the Patents-in-Suit, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '213 Patent under 35 U.S.C. § 271. Defendant induces and contributes to the infringement of its customers, including purchasers of the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '213 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe

the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. For example, Defendant's Accused Products are shipped with a User Guide that instructs and encourages customers to infringe. (*See* Exhibit 9). Thus, Defendant is liable for infringement of one or more claims of the '213 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '213 Patent under 35 U.S.C. § 271.

47.   Defendant's acts of infringement of the '213 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '213 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

48.   On information and belief, the infringement of the '213 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '213 Patent, including but not limited to at least one or more of the following:

    a.   In the course of its due diligence and freedom to operate analysis;

    b.   Due diligence in relation to concurrent litigation with Blue Spike; and

    c.   The filing of this complaint. (*See Affinity Labs of Texas, LLC v. Alpine Elecs. of Am., Inc*., No. 9:08-CV-171, 2009 WL 9091275, at *4 (E.D. Tex. Sept. 2, 2009) (holding that there is no *per se* rule prohibiting a claim for willfulness relying on post-filing conduct, regardless of whether an injunction was sought)).

On information and belief, Defendant has had at least had constructive notice of the '213 Patent by operation of law.

## COUNT 4:
## INFRINGEMENT OF U.S. PATENT 7,475,246

49.    Blue Spike incorporates by reference the allegations in the paragraphs above.

50.    The '246 Patent is valid, is enforceable, and was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '246 Patent is attached to this Complaint as Exhibit D.

51.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '246 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

52.    Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '246 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '246 Patent. Specifically, Defendants manufacture and/or import the Accused Products into the United States; have partnered with numerous resellers to offer for sale and sell the Accused Products in the United States, in numerous stores and websites (*see*, *e.g.*, Exhibits. 1, 2, 6); operate their own websites that offer for sale and sell the Accused Products to consumers in Texas and this District (*see*, *e.g.*, Exhibits 3, 4); and generate revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*).

53.    Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012) ("Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation.").

54.    The Accused Products infringe claims of the '246 Patent, such as Claim 1 which teaches

> A local content server system (LCS) for creating a secure environment for digital content, comprising:
> a) a communications port for connecting the system via a network to at least one Secure Electronic Content Distributor (SECD), said SECD storing a plurality of data sets, receiving a request to transfer at least one content data set, and transmitting the at least one content data set in a secured transmission;
> b) a rewritable storage medium whereby content received from outside the LCS is stored and retrieved;
> c) a domain processor that imposes rules and procedures for content being transferred between the LCS and devices outside the LCS; and
> d) a programmable address module programmed with an identification code uniquely associated with the LCS; and
> said domain processor permitting the LCS to receive digital content from outside the LCS provided the LCS first determines that the digital content being delivered to the LCS is authorized for use by the LCS and if the digital content is not authorized for use by the LCS, accepting the digital content at a predetermined quality level, said predetermined quality level having been set for legacy content.

Defendant's Accused Products are transferred from Defendant to the purchaser's Accused Product (*a local content server; a secure electronic content distributor*). *See, e.g.*, Exhibits 12, 13. Purchaser's Accused Product has a unique ID that is associated with the

purchaser's account (*with an identification code uniquely associated with the LCS. See, e.g.,* Exhibit 9 at 55. The content will not be downloaded to the purchaser's Accused Product unless it is authorized (*first determines that the digital content being delivered to the LCS is authorized for use by the LCS*). *See* Exhibit 9 at 55. The Accused Products are configured to receive the secure ePub format, or legacy PDF or PDB formats (*legacy content*). *See, e.g.* Exhibit 9 at 26.

55.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '246 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '246 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '246 Patent. By making, using, importing offering for sale, and/or selling such products, and with knowledge of the Patents-in-Suit, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '246 Patent under 35 U.S.C. § 271. Defendant induces and contributes to the infringement of its customers, including purchasers of the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '246 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce

its customers and partners to infringe. For example, Defendant's Accused Products are shipped with a User Guide that instructs and encourages customers to infringe. (*See* Exhibit 9). Thus, Defendant is liable for infringement of one or more claims of the '286 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '246 Patent under 35 U.S.C. § 271.

56.    Defendant's acts of infringement of the '246 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '246 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

57.    On information and belief, the infringement of the '246 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '246 Patent, including but not limited to at least one or more of the following:

a.    In the course of its due diligence and freedom to operate analysis;

b.    Due diligence in relation to concurrent litigation with Blue Spike; and

c.    The filing of this complaint. (*See Affinity Labs of Texas, LLC v. Alpine Elecs. of Am., Inc*., No. 9:08-CV-171, 2009 WL 9091275, at *4 (E.D. Tex. Sept. 2, 2009) (holding that there is no *per se* rule prohibiting a claim for willfulness relying on post-filing conduct, regardless of whether an injunction was sought)).

On information and belief, Defendant has had at least had constructive notice of the '246 Patent by operation of law.

## COUNT 5:

## INFRINGEMENT OF U.S. PATENT 8,171,561

58.    Blue Spike incorporates by reference the allegations in the paragraphs above.

59.    The '561 Patent is valid, is enforceable, and was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '561 Patent is attached to this Complaint as Exhibit E.

60.    Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '561 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

61.    Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '561 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '561 Patent. Specifically, Defendants manufacture and/or import the Accused Products into the United States; have partnered with numerous resellers to offer for sale and sell the Accused Products in the United States, in numerous stores and websites (*see*, *e.g.*, Exhibits. 1, 2, 6); operate their own websites that offer for sale and sell the Accused Products to consumers in Texas and this District (*see*, *e.g.*, Exhibits 3, 4); and generate revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*).

62.    Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012)

("Plaintiffs are not required to identify specific claims or claim elements at this stage of

the litigation.").

63.     The Accused Products infringe claims of the '561 Patent, such as Claim 1 which

teaches

> A local content server (LCS), comprising:
> a)  an LCS communications port; an LCS storage unit
>     for storing digital data; and an LCS domain
>     processor for processing digital data; and an LCS
>     identification code uniquely associated with said
>     LCS;
> wherein said LCS stores in said LCS storage unit a
>     plurality of rules for processing a data set;
> wherein said LCS is configured to receive via said
>     communications port a first data set that includes
>     data defining first content;
> wherein said LCS is configured to use said domain
>     processor to determine from inspection of said first
>     data set for a watermark, a first data set status
>     value of said first data set to be at least one of
>     unsecure, secure, and legacy;
> wherein said LCS is configured to use said first data
>     set status value to determine which of a set of rules
>     to apply to process said first data set prior to
>     storage of a processed second data set resulting
>     from processing of said first data set, in said LCS
>     storage unit;
> wherein said LCS is configured to determine, at least
>     in part from rights associated with a user
>     identification associated with a prompt received by
>     said LCS for said first content, a quality level at
>     which to transmit said first content, wherein said
>     quality level is one of at least unsecure, secure, and
>     legacy; and
> wherein a quality level of legacy means that said first
>     content does not include said watermark.

Defendant's Accused Products are transferred from Defendant to the purchaser's Accused

Product (*a local content server*). *See, e.g.*, Exhibits 12, 13. Purchaser's Accused Product

has a unique ID that is associated with the purchaser's account (*an identification code*

*uniquely associated with the LCS*). *See, e.g.,* Exhibit 9 at 55. Secure content (e.g. an ePub

book) will not be downloaded to the purchaser's Accused Product unless it is authorized, but unsecured or legacy content (e.g. a PDB or PDF) might (*a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy*). *See* Exhibit 9 at 55. The Accused Products are configured to receive content that does not include a watermark (e.g. a PDF instead of an ePub) (*wherein a quality level of legacy means that said first content does not include said watermark*). *See, e.g.* Exhibit 9 at 26.

64.     Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '561 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '561 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '561 Patent. By making, using, importing offering for sale, and/or selling such products, and with knowledge of the Patents-in-Suit, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '561 Patent under 35 U.S.C. § 271. Defendant induces and contributes to the infringement of its customers, including purchasers of the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '561 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and

have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. For example, Defendant's Accused Products are shipped with a User Guide that instructs and encourages customers to infringe. (*See* Exhibit 9). Thus, Defendant is liable for infringement of one or more claims of the '561 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '561 Patent under 35 U.S.C. § 271.

65.    Defendant's acts of infringement of the '561 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '561 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

66.    On information and belief, the infringement of the '561 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '561 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

    b.    Due diligence in relation to concurrent litigation with Blue Spike; and

    c.    The filing of this complaint. (*See Affinity Labs of Texas, LLC v. Alpine Elecs. of Am., Inc*., No. 9:08-CV-171, 2009 WL 9091275, at *4 (E.D. Tex. Sept. 2, 2009) (holding that there is no *per se* rule prohibiting a claim for willfulness relying on post-filing conduct, regardless of whether an injunction was sought)).

On information and belief, Defendant has had at least had constructive notice of the '561 Patent by operation of law.

### COUNT 6:
### INFRINGEMENT OF U.S. PATENT 8,739,295

67.   Blue Spike incorporates by reference the allegations in the paragraphs above.

68.   The '295 Patent is valid, is enforceable, and was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '295 Patent is attached to this Complaint as Exhibit F.

69.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '295 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

70.   Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '295 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '295 Patent. Specifically, Defendants manufacture and/or import the Accused Products into the United States; have partnered with numerous resellers to offer for sale and sell the Accused Products in the United States, in numerous stores and websites (*see*, *e.g.*, Exhibits. 1, 2, 6); operate their own websites that offer for sale and sell the Accused Products to consumers in Texas and this District (*see*, *e.g.*, Exhibits 3, 4); and generate revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*).

71.    Although Blue Spike is not obligated to identify specific claims or claim elements

in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right

Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012)

("Plaintiffs are not required to identify specific claims or claim elements at this stage of

the litigation.").

72.    The Accused Products infringe claims of the '295 Patent, such as Claim 13 which

teaches

> A method for using a local content server system (LCS),
> said LCS comprising an LCS communications port; an
> LCS storage unit for storing digital data in non-transitory
> form; an LCS domain processor that imposes a plurality
> of rules and procedures for content being transferred
> between said LCS and devices outside said LCS, thereby
> defining a first LCS domain; and a programmable address
> module programmed with an LCS identification code
> uniquely associated with said LCS domain processor;
> comprising:
>> storing, in said LCS storage unit, a plurality of rules
>> for processing a data set;
>> receiving, via said LCS communications port, a first
>> data set that includes data defining first content;
>> said LCS determining whether said first content
>> belongs to a different LCS domain than said first
>> LCS domain;
>> said LCS excluding from said first LCS domain said
>> first content when said LCS determines that said
>> first content belongs to said different LCS domain;
>> said LCS domain processor determining, from said
>> first data set, a first data set status value of said
>> first data set to be at least one of unsecure, secure,
>> and legacy;
>> said LCS determining, using said first data set status
>> value, which of a set of rules to apply to process
>> said first data set; and
>> said LCS determining, at least in part from rights
>> associated with an identification associated with a
>> prompt received by said LCS for said first content,
>> a quality level at which to transmit said first

> content, wherein said quality level is one of at least
> unsecure, secure, and legacy;
> said LCS transmitting said first content at the
> determined quality level.

Defendant's Accused Products are transferred from Defendant to the purchaser's Accused Product (*a local content server*). *See, e.g.*, Exhibits 12, 13. Purchaser's Accused Product has a unique ID that is associated with the purchaser's account (*an identification code uniquely associated with the LCS*). *See, e.g.,* Exhibit 9 at 55. Secure content (e.g. an ePub book) will not be downloaded to the purchaser's Accused Product unless it is authorized, but unsecured or legacy content (e.g. a PDB or PDF) might (*a quality level at which to transmit said first content, wherein said quality level is one of at least unsecure, secure, and legacy*). *See* Exhibit 9 at 55.

73.    Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '295 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '295 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '295 Patent. By making, using, importing offering for sale, and/or selling such products, and with knowledge of the Patents-in-Suit, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '295 Patent under 35 U.S.C. § 271. Defendant induces and contributes to the infringement of its customers, including purchasers of the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users

of the Accused Products. Defendant had knowledge of the '295 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. For example, Defendant's Accused Products are shipped with a User Guide that instructs and encourages customers to infringe. (*See* Exhibit 9). Thus, Defendant is liable for infringement of one or more claims of the '295 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '295 Patent under 35 U.S.C. § 271.

74.    Defendant's acts of infringement of the '295 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '295 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

75.    On information and belief, the infringement of the '295 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '295 Patent, including but not limited to at least one or more of the following:

   a.    In the course of its due diligence and freedom to operate analysis;

   b.    Due diligence in relation to concurrent litigation with Blue Spike; and

   c.    The filing of this complaint. (*See Affinity Labs of Texas, LLC v. Alpine Elecs. of Am., Inc*., No. 9:08-CV-171, 2009 WL 9091275, at *4 (E.D. Tex. Sept. 2, 2009) (holding that there is no *per se* rule prohibiting a claim for willfulness

relying on post-filing conduct, regardless of whether an injunction was

sought)).

On information and belief, Defendant has had at least had constructive notice of the '295

Patent by operation of law.

**COUNT 7:**

**INFRINGEMENT OF U.S. PATENT 7,813,506**

76.   Blue Spike incorporates by reference the allegations in the paragraphs above.

77.   The '506 Patent is valid, is enforceable, and was duly and legally issued by the

United States Patent and Trademark Office. A true and correct copy of the '506 Patent is

attached to this Complaint as Exhibit G.

78.   Without a license or permission from Blue Spike, Defendant has infringed and

continue to infringe on one or more claims of the '506 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and

devices that embody the patented invention, including, without limitation, one or more of

the Accused Products, in violation of 35 U.S.C. § 271.

79.   Defendants have been and now are directly infringing by, among other things,

practicing all of the steps of the '506 Patent and/or directing, controlling, and obtaining

benefits from its partners, distributors and retailers practicing all of the steps of the '506

Patent. Specifically, Defendants manufacture and/or import the Accused Products into the

United States; have partnered with numerous resellers to offer for sale and sell the

Accused Products in the United States, in numerous stores and websites (*see*, *e.g.*,

Exhibits. 1, 2, 6); operate their own websites that offer for sale and sell the Accused

Products to consumers in Texas and this District (*see*, *e.g.*, Exhibits 3, 4); and generate

revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*).

80.   Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012) ("Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation.").

81.   The Accused Products infringe claims of the '506 Patent, such as Claim 12 which teaches

> A method for authorizing data objects, comprising:
> embedding data into a data object;
> scrambling the data object where at least a portion of the embedded data can be authorized from the scrambled data object;
> distributing the scrambled data object; and
> distributing at least one key that enables authorization of the scrambled data object based on the embedded data.

Defendant's Accused Products watermark ebooks with information specific to the purchaser and encoded by encryption, and require decoding of the digital watermark in order for the ebook to be viewed, in order to authorize the ebooks for use on a purchaser's machine (*a method for authorizing data objects; embedding data into a data object; scrambling the data object where at least a portion of the embedded data can be authorized from the scrambled data object*). *See, e.g.*, Exhibit 8 (Barnes and Noble uses Adobe's ADEPT DRM scheme in which "a per-user RSA key encrypts a per-book AES key which encrypts the content"); Exhibit 9 at 69, Exhibit 10 at 10 (explaining how personal information must be entered to access ebooks including all credit card numbers associated with a user's ebooks); Exhibit 11 at 4 ("Barnes and Noble's Nook . . . uses an

encryption key based on the customer's name and credit card number."). When an ebook is purchased, it is sent to the accused product with the key (*distributing the scrambled data object; distributing at least one key that enables authorization of the scrambled data object based on the embedded data*) *See, e.g.*, Exhibit 8 (Barnes and Noble uses Adobe's ADEPT DRM scheme in which "a per-user RSA key encrypts a per-book AES key which encrypts the content").

82.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '506 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '506 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '506 Patent. By making, using, importing offering for sale, and/or selling such products, and with knowledge of the Patents-in-Suit, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '506 Patent under 35 U.S.C. § 271. Defendant induces and contributes to the infringement of its customers, including purchasers of the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '506 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce

its customers and partners to infringe. For example, Defendant's Accused Products are shipped with a User Guide that instructs and encourages customers to infringe. (*See* Exhibit 9). Thus, Defendant is liable for infringement of one or more claims of the '506 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '506 Patent under 35 U.S.C. § 271.

83.    Defendant's acts of infringement of the '506 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '506 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

84.    On information and belief, the infringement of the '506 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '506 Patent, including but not limited to at least one or more of the following:

a.    In the course of its due diligence and freedom to operate analysis;

b.    Due diligence in relation to concurrent litigation with Blue Spike; and

c.    The filing of this complaint. (*See Affinity Labs of Texas, LLC v. Alpine Elecs. of Am., Inc*., No. 9:08-CV-171, 2009 WL 9091275, at *4 (E.D. Tex. Sept. 2, 2009) (holding that there is no *per se* rule prohibiting a claim for willfulness relying on post-filing conduct, regardless of whether an injunction was sought)).

On information and belief, Defendant has had at least had constructive notice of the '506 Patent by operation of law.

**COUNT 8:**

**INFRINGEMENT OF U.S. PATENT 8,798,268**

85.     Blue Spike incorporates by reference the allegations in the paragraphs above.

86.     The '268 Patent is valid, is enforceable, and was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '268 Patent is attached to this Complaint as Exhibit H.

87.     Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '268 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

88.     Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '268 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '268 Patent. Specifically, Defendants manufacture and/or import the Accused Products into the United States; have partnered with numerous resellers to offer for sale and sell the Accused Products in the United States, in numerous stores and websites (*see*, *e.g.*, Exhibits. 1, 2, 6); operate their own websites that offer for sale and sell the Accused Products to consumers in Texas and this District (*see*, *e.g.*, Exhibits 3, 4); and generate revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*).

89.     Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012)

("Plaintiffs are not required to identify specific claims or claim elements at this stage of

the litigation.").

90.     The Accused Products infringe claims of the '268 Patent, such as Claim 12 which

teaches

> A method for using a device to render content to provide
> at least one of an audible signal and a visual signal for
> perception by a person, comprising:
>> receiving in said device a signal stream comprising
>> content in which the content in said signal stream is
>> scrambled;
>> applying, in said device, to said signal stream and a
>> first key, a first algorithm to produce a first
>> algorithm output;
>> applying, in said device, to said first algorithm output
>> and at least one second key, a second algorithm to
>> produce a second algorithm output which is
>> unscrambled;
>> generating, in said device, at least one of an audible
>> signal and a visual signal, from said second
>> algorithm output.

Defendant's Accused Products provide, among other functionality, the ability for a user to

read an electronic book (*a device to render content to provide . . . a visual signal for

perception by a person*). *See, e.g.,* Exhibit 9, at 3-4. Electronic books (e.g. those protected

by the ePub format) are scrambled twice: once with a "per-user RSA key [that] encrypts a

per-book AES key" and then again when the AES key "encrypts the content" (although

not necessarily in that order); the Accused Products receive these protected ebooks and

perform the reverse to prepare them for use (*receiving in said device a signal stream

comprising content in which the content in said signal stream is scrambled; applying a

first key; applying a second key; generating a visual signal from said second algorithm

output*). *See, e.g.*, Exhibit 8 (Barnes and Noble uses Adobe's ADEPT DRM scheme in

which "a per-user RSA key encrypts a per-book AES key which encrypts the content");

Exhibit 9 at 69, Exhibit 10 at 10 (explaining how personal information must be entered to access ebooks including all credit card numbers associated with a user's ebooks); Exhibit 11 at 4 ("Barnes and Noble's Nook . . . uses an encryption key based on the customer's name and credit card number.").

91.   Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '268 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '268 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '268 Patent. By making, using, importing offering for sale, and/or selling such products, and with knowledge of the Patents-in-Suit, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '268 Patent under 35 U.S.C. § 271. Defendant induces and contributes to the infringement of its customers, including purchasers of the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '268 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. For example, Defendant's Accused Products are shipped with a User Guide that instructs and encourages customers to infringe. (*See*

Exhibit 9). Thus, Defendant is liable for infringement of one or more claims of the '268 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '506 Patent under 35 U.S.C. § 271.

92.    Defendant's acts of infringement of the '268 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '268 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

93.    On information and belief, the infringement of the '268 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '268 Patent, including but not limited to at least one or more of the following:

   a.    In the course of its due diligence and freedom to operate analysis;

   b.    Due diligence in relation to concurrent litigation with Blue Spike; and

   c.    The filing of this complaint. (*See Affinity Labs of Texas, LLC v. Alpine Elecs. of Am., Inc.*, No. 9:08-CV-171, 2009 WL 9091275, at *4 (E.D. Tex. Sept. 2, 2009) (holding that there is no *per se* rule prohibiting a claim for willfulness relying on post-filing conduct, regardless of whether an injunction was sought)).

On information and belief, Defendant has had at least had constructive notice of the '268 Patent by operation of law.

## COUNT 9:

## INFRINGEMENT OF U.S. PATENT 7,953,981

94.     Blue Spike incorporates by reference the allegations in the paragraphs above.

95.     The '981 Patent is valid, is enforceable, and was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '981 Patent is attached to this Complaint as Exhibit I.

96.     Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '981 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

97.     Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '981 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '981 Patent. Specifically, Defendants manufacture and/or import the Accused Products into the United States; have partnered with numerous resellers to offer for sale and sell the Accused Products in the United States, in numerous stores and websites (*see*, *e.g.*, Exhibits. 1, 2, 6); operate their own websites that offer for sale and sell the Accused Products to consumers in Texas and this District (*see*, *e.g.*, Exhibits 3, 4); and generate revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*).

98.     Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012)

("Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation.").

99.    The Accused Products infringe claims of the '981 Patent, such as Claim 2 which teaches

> An article of manufacture comprising a non-transitory machine readable medium, having thereon stored instructions adapted to be executed by a processor, which instructions when executed by a processor result in a process comprising:
>     providing a watermark and a signal;
>     attaching a user identification dependent hash to the watermark; and
>     encoding the user identification dependent hash and the watermark into the signal.

Defendant's Accused Products provide, among other functionality, the ability for a user to read an electronic book (*a signal*). *See, e.g.,* Exhibit 9, at 3-4. Electronic books (e.g. those protected by the ePub format) are scrambled twice: once with a "per-user RSA key [that] encrypts a per-book AES key" and then again when the AES key "encrypts the content" (although not necessarily in that order) (*providing a watermark; attaching a user identification dependent hash; encoding the user identification independent hash and the watermark into the signal*). *See, e.g.*, Exhibit 8 (Barnes and Noble uses Adobe's ADEPT DRM scheme in which "a per-user RSA key encrypts a per-book AES key which encrypts the content"); Exhibit 9 at 69, Exhibit 10 at 10 (explaining how personal information must be entered to access ebooks including all credit card numbers associated with a user's ebooks); Exhibit 11 at 4 ("Barnes and Noble's Nook . . . uses an encryption key based on the customer's name and credit card number.").

100. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '981

Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '981 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '981 Patent. By making, using, importing offering for sale, and/or selling such products, and with knowledge of the Patents-in-Suit, Defendant injured Blue Spike and is thus liable to Blue Spike for infringement of the '981 Patent under 35 U.S.C. § 271. Defendant induces and contributes to the infringement of its customers, including purchasers of the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '981 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. For example, Defendant's Accused Products are shipped with a User Guide that instructs and encourages customers to infringe. (*See* Exhibit 9). Thus, Defendant is liable for infringement of one or more claims of the '981 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '981 Patent under 35 U.S.C. § 271.

101.  Defendant's acts of infringement of the '981 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to

35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '981 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

102.   On information and belief, the infringement of the '981 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '981 Patent, including but not limited to at least one or more of the following:

   a.   In the course of its due diligence and freedom to operate analysis;

   b.   Due diligence in relation to concurrent litigation with Blue Spike; and

   c.   The filing of this complaint. (*See Affinity Labs of Texas, LLC v. Alpine Elecs. of Am., Inc*., No. 9:08-CV-171, 2009 WL 9091275, at *4 (E.D. Tex. Sept. 2, 2009) (holding that there is no *per se* rule prohibiting a claim for willfulness relying on post-filing conduct, regardless of whether an injunction was sought)).

On information and belief, Defendant has had at least had constructive notice of the '981 Patent by operation of law.

## COUNT 10:
## INFRINGEMENT OF U.S. PATENT 8,121,343

103.   Blue Spike incorporates by reference the allegations in the paragraphs above.

104.   The '343 Patent is valid, is enforceable, and was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '343 Patent is attached to this Complaint as Exhibit J.

105.   Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '343 Patent—directly, contributorily, or

by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

106.   Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '343 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '343 Patent. Specifically, Defendants manufacture and/or import the Accused Products into the United States; have partnered with numerous resellers to offer for sale and sell the Accused Products in the United States, in numerous stores and websites (*see*, *e.g.*, Exhibits. 1, 2, 6); operate their own websites that offer for sale and sell the Accused Products to consumers in Texas and this District (*see*, *e.g.*, Exhibits 3, 4); and generate revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*).

107.  Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012) ("Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation.").

108.   The Accused Products infringe claims of the '343 Patent, such as Claim 6 which teaches

> A method of decoding a watermark message from a signal, comprising:
> analyzing said signal to identify signal features within said signal that are suitable for embedding one or more bits of a watermark message; and decoding a

watermark message from said signal using said
signal features identified by the analyzing step.

Defendant's Accused Products provide, among other functionality, the ability for a user to read an electronic book (*a signal*). *See, e.g.,* Exhibit 9, at 3-4. Electronic books (e.g. those protected by the ePub format) are scrambled twice: once with a "per-user RSA key [that] encrypts a per-book AES key" and then again when the AES key "encrypts the content" (although not necessarily in that order) (*analyzing said signal to identify signal features within said signal that are suitable for embedding one or more bits of a watermark message; and decoding a watermark message from said signal*). *See, e.g.,* Exhibit 8 (Barnes and Noble uses Adobe's ADEPT DRM scheme in which "a per-user RSA key encrypts a per-book AES key which encrypts the content"); Exhibit 9 at 69, Exhibit 10 at 10 (explaining how personal information must be entered to access ebooks including all credit card numbers associated with a user's ebooks); Exhibit 11 at 4 ("Barnes and Noble's Nook . . . uses an encryption key based on the customer's name and credit card number.").

109. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '343 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '343 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '343 Patent. By making, using, importing offering for sale, and/or selling such products, and with knowledge of the Patents-in-Suit, Defendant

injured Blue Spike and is thus liable to Blue Spike for infringement of the '343 Patent under 35 U.S.C. § 271. Defendant induces and contributes to the infringement of its customers, including purchasers of the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '343 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. For example, Defendant's Accused Products are shipped with a User Guide that instructs and encourages customers to infringe. (*See* Exhibit 9). Thus, Defendant is liable for infringement of one or more claims of the '343 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '343 Patent under 35 U.S.C. § 271.

110.  Defendant's acts of infringement of the '343 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '343 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

111.  On information and belief, the infringement of the '343 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '343 Patent, including but not limited to at least one or more of the following:

a.      In the course of its due diligence and freedom to operate analysis;

     b.     Due diligence in relation to concurrent litigation with Blue Spike; and

     c.     The filing of this complaint. (*See Affinity Labs of Texas, LLC v. Alpine Elecs. of Am., Inc.*, No. 9:08-CV-171, 2009 WL 9091275, at \*4 (E.D. Tex. Sept. 2, 2009) (holding that there is no *per se* rule prohibiting a claim for willfulness relying on post-filing conduct, regardless of whether an injunction was sought)).

On information and belief, Defendant has had at least had constructive notice of the '343 Patent by operation of law.

## COUNT 11:
## INFRINGEMENT OF U.S. PATENT 7,159,116

112.  Blue Spike incorporates by reference the allegations in the paragraphs above.

113.  The '116 Patent is valid, is enforceable, and was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '116 Patent is attached to this Complaint as Exhibit I.

114.  Without a license or permission from Blue Spike, Defendant has infringed and continue to infringe on one or more claims of the '116 Patent—directly, contributorily, or by inducement—by importing, making, using, offering for sale, or selling products and devices that embody the patented invention, including, without limitation, one or more of the Accused Products, in violation of 35 U.S.C. § 271.

115.  Defendants have been and now are directly infringing by, among other things, practicing all of the steps of the '116 Patent and/or directing, controlling, and obtaining benefits from its partners, distributors and retailers practicing all of the steps of the '116 Patent. Specifically, Defendants manufacture and/or import the Accused Products into the

United States; have partnered with numerous resellers to offer for sale and sell the Accused Products in the United States, in numerous stores and websites (*see*, *e.g.*, Exhibits. 1, 2, 6); operate their own websites that offer for sale and sell the Accused Products to consumers in Texas and this District (*see*, *e.g.*, Exhibits 3, 4); and generate revenue from sales of the Accused Products to U.S. customers in said stores and via said websites (*see id.*).

116.  Although Blue Spike is not obligated to identify specific claims or claim elements in its complaint, it does so below for Defendant's benefit. *See Rmail Ltd. v. Right Signature, LLC*, 2:11-CV-300-JRG, 2012 WL 2595305, at *2 (E.D. Tex. July 5, 2012) ("Plaintiffs are not required to identify specific claims or claim elements at this stage of the litigation.").

117.    The Accused Products infringe claims of the '116 Patent, such as Claim 14 which teaches

> A device for conducting a trusted transaction between at least two parties who have agreed to transact, comprising:
>> means for uniquely identifying information selected from the group consisting of a unique identification of one of the parties, a unique identification of the transaction, a unique identification of value added information to be transacted, a unique identification of a value adding component;
>> a steganographic cipher for generating said unique identification information, wherein the steganographic cipher is governed by at least the following elements: a predetermined key, a predetermined message, and a predetermined carrier signal; and
>> a means for verifying an agreement to transact between the parties.

Defendant's Accused Products provide facilitate transfer of an ebook (*a device for conducting a trusted transaction between at least two parties who have agreed to*

*transact*). *See, e.g.,* Exhibit 9, at 3-4. Electronic books (e.g. those protected by the ePub format) are scrambled twice: once with a "per-user RSA key [that] encrypts a per-book AES key" and then again when the AES key "encrypts the content" (although not necessarily in that order) (*a steganographic cipher for generating said unique identification information . . . governed by a predetermined key*). *See, e.g.*, Exhibit 8 (Barnes and Noble uses Adobe's ADEPT DRM scheme in which "a per-user RSA key encrypts a per-book AES key which encrypts the content"); Exhibit 9 at 69, Exhibit 10 at 10 (explaining how personal information must be entered to access ebooks including all credit card numbers associated with a user's ebooks); Exhibit 11 at 4 ("Barnes and Noble's Nook . . . uses an encryption key based on the customer's name and credit card number."). The ebook is marked with information specific to the user and the user's agreement to purchase. Exhibit 9 at 69, Exhibit 10 at 10 (explaining how personal information must be entered to access ebooks including all credit card numbers associated with a user's ebooks).

118. Defendant has been and now is indirectly infringing by way of inducing infringement by others and/or contributing to the infringement by others of the '116 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, products for use in systems that fall within the scope of one or more claims of the '116 Patent. Such products include, without limitation, one or more of the Accused Products. Such products have no substantial non-infringing uses and are for use in systems that infringe the '116 Patent. By making, using, importing offering for sale, and/or selling such products, and with knowledge of the Patents-in-Suit, Defendant

injured Blue Spike and is thus liable to Blue Spike for infringement of the '116 Patent under 35 U.S.C. § 271. Defendant induces and contributes to the infringement of its customers, including purchasers of the Accused Products. Those whom Defendant induces to infringe and/or to whose infringement Defendant contributes are the end users of the Accused Products. Defendant had knowledge of the '116 Patent at least as early as the service of this complaint. Defendant has known that the Accused Products infringe the Patents-in-Suit, are especially made and adapted to infringe the Patents-in-Suit, and have no alternative non-infringing uses. Nevertheless, Defendant has continued to induce its customers and partners to infringe. For example, Defendant's Accused Products are shipped with a User Guide that instructs and encourages customers to infringe. (*See* Exhibit 9). Thus, Defendant is liable for infringement of one or more claims of the '116 Patent by actively inducing infringement and/or is liable as contributory infringer of one or more claims of the '981 Patent under 35 U.S.C. § 271.

119.  Defendant's acts of infringement of the '116 Patent have caused damage to Blue Spike, and Blue Spike is entitled to recover from Defendant the damages sustained as a result of Defendant's wrongful acts in an amount subject to proof at trial pursuant to 35 U.S.C. § 271. Defendant's infringement of Blue Spike's exclusive rights under the '116 Patent will continue to damage Blue Spike, causing it irreparable harm, for which there is no adequate remedy at law, warranting an injunction from the Court.

120.  On information and belief, the infringement of the '116 Patent by Defendant has been willful and continues to be willful. Defendant had knowledge of the '116 Patent, including but not limited to at least one or more of the following:

    a.    In the course of its due diligence and freedom to operate analysis;

b.   Due diligence in relation to concurrent litigation with Blue Spike; and

c.   The filing of this complaint. (*See Affinity Labs of Texas, LLC v. Alpine Elecs. of Am., Inc*., No. 9:08-CV-171, 2009 WL 9091275, at *4 (E.D. Tex. Sept. 2, 2009) (holding that there is no *per se* rule prohibiting a claim for willfulness relying on post-filing conduct, regardless of whether an injunction was sought)).

On information and belief, Defendant has had at least had constructive notice of the '116 Patent by operation of law.

## REQUEST FOR RELIEF

Blue Spike incorporates each of the allegations in the paragraphs above and respectfully asks the Court to:

(a)   enter a judgment that Defendant has directly infringed, contributorily infringed, and/or induced infringement of one or more claims of each of the Patents-in-Suit;

(b)   enter a judgment awarding Blue Spike all damages adequate to compensate it for Defendant's direct infringement of, contributory infringement of, or inducement to infringe, the Patents-in-Suit, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

(c)   enter a judgment awarding treble damages pursuant to 35 U.S.C. § 284 for Defendant's willful infringement of one or more of the Patents-in-Suit;

(d)   issue a preliminary injunction and thereafter a permanent injunction enjoining and restraining Defendant, their directors, officers, agents, servants, employees, and those acting in privity or in concert with them, and their subsidiaries, divisions, successors, and

assigns, from further acts of infringement, contributory infringement, or inducement of infringement of the Patents-in-Suit;

(e)     enter a judgment requiring Defendant to pay the costs of this action, including all disbursements, and attorneys' fees as provided by 35 U.S.C. § 285, together with prejudgment interest; and

(f)     award Blue Spike all other relief that the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Blue Spike demands a jury trial on all issues that may be determined by a jury.

Respectfully submitted,

/s/ Randall T. Garteiser
Randall T. Garteiser
  Texas Bar No. 24038912
  rgarteiser@ghiplaw.com
Christopher A. Honea
  Texas Bar No. 24059967
  chonea@ghiplaw.com
**GARTEISER HONEA, PLLC**
119 W Ferguson St.
Tyler, Texas 75702
Tel/Fax: (888) 908-4400

Kirk J. Anderson
  California Bar No. 289043
  kanderson@ghiplaw.com
Ian N. Ramage
  California Bar No. 224881
  iramage@ghiplaw.com
**GARTEISER HONEA, PC**
44 North San Pedro Road
San Rafael, California 94903
Telephone: (415) 785-3762
Facsimile: (415) 785-3805

***Counsel for Blue Spike, LLC***

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Federal Rule of Civil Procedure 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this date stamped above.

　/s/ Randall T. Garteiser　
Randall T. Garteiser